**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

APR 2 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT<br>20300 Civic Center Dr. Suite 320<br>Southfield, MI 48076-4169 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | |
| NORFOLK SOUTHERN RAILWAY. CORP.<br>Three Commercial Place<br>Norfolk, VA 23510 | |
| Defendant. | |

CASE NUMBER   1:06CV00754

JUDGE: Royce C. Lamberth

DECK TYPE: Labor/ERISA (non-employmer

DATE STAMP: 04/25/2006

## PETITION FOR ENFORCEMENT OF ARBITRATION AWARD

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") brings this complaint against the Norfolk Southern Ry. Corp. ("NSR") for an order enforcing an arbitration award rendered by a Special Board of Adjustment created pursuant to Section 3 Second of the Railway Labor Act ("RLA"), 45 U.S.C. §153 Second. In September of 2005, the Board held that NSR violated an agreement between the parties when NSR terminated protective benefits for several BMWED members. However, NSR has refused to comply with the Award of the Board by refusing to pay to the BMWED members the benefits that they were improperly denied when the carrier terminated their status as employees protected under the Agreement.

### PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Southfield, Michigan. BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of NSR working in the class or craft of maintenance of way employee.

1

2. NSR is a rail carrier as that term in defined in Section 1 of the RLA, 45 U.S.C. §151

First. NSR conducts rail operations in the eastern portion of the United States, including the

District of Columbia,

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 1337,

§§ 2201 and 2202; and 45 U.S.C. § 153 First (p).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because NSR

does business in the District of Columbia, has dealings with BMWED in the District of

Columbia and operates trains in and through the District of Columbia.

## STATEMENT OF THE CLAIM

5. BMWED and NSR are parties to an agreement known as the February 7, 1965,

Mediation Agreement, amended effective September 26, 1996, ("Feb. 7 Agreement").

6. The Feb. 7 Agreement provides that employees who are furloughed or suffer reduction

in compensation  are entitled to protective benefits in the form of financial compensation to

replace lost earnings and other benefits while they are furloughed or suffer a reduction in

compensation.

7. The Feb. 7 Agreement also provides that an employee ceases to be protected if he fails

to obtain an available position he could obtain by "exercise of his seniority rights in accordance

with existing rules or agreements....".

8. An agreement between BMWED and NSR provides that employees with seniority pre-

dating December 1, 1983 are not required to exercise seniority rights beyond the territory covered

by their original seniority, and that failure to exercise seniority rights other than their original

seniority will not adversely affect their rights under "merger or other employee protection

2

conditions".

9. Several NSR employees, R.L. Beaver, A. Smelser and M.V. Elam ("Claimants") were furloughed by NSR in February of 2000; they were determined to be eligible for, and were provided, protective benefits under the Feb. 7 Agreement.

10. In February of 2001, positions became available on traveling a Designated Program Gang, which covers a territory significantly larger than the seniority districts where the claimants originally obtained seniority. Claimaints did not exercise seniority to obtain those positions.

11. After the Claimants declined to exercise seniority on the Designated Program Rail Gang, NSR cut off their protective benefits under the Feb. 7 Agreement. NSR asserted that they forfeited their protected status, and thus entitlement to benefits because they did not use their seniority to obtain positions on the Rail Gang.

12. BMWED submitted claims for the claimants, asserting that NSR violated the Feb. 7 Agreement when it terminated their benefits.

13. The parties were unable to resolve their differences. Pursuant to the Feb. 7 agreement, the dispute was referred to Special Board of Adjustment No. 1087 chaired by neutral member Ann S. Kenis

14. The Board issued a decision and award in September of 2004. A copy of that Decision and Award is attached to this petition.

15. After reviewing the agreements cited by the parties, and describing the positions of the parties, the Board found that "the Organization's claim has merit. Claimants exercised seniority in accordance with existing agreements, precisely as specified in Article II of the Feb. 7 Agreement. Since they hold seniority rights prior to December 1, 1983, they were not required to exercise those seniority rights to the DPG positions which were beyond the territory embraced by

3

their prior seniority".... "Their decision to refrain from bidding could not result in the forfeiture of their protected status under the Feb. 7 Agreement".

16. The Board therefore sustained the claim and issued an award stating that NSR violated the Feb. 7 Agreement "when it terminated the Claimants protected benefits".

17. After the Award was issued, BMWED made inquiries about whether when and NSR would pay the claimants for their improperly terminated benefits.

18. On November 14, 2005, NSR Assistant Director Labor Relations Louis Miller wrote to BMWED General Chairman Thomas R. McCoy about the dispute over the protective benefits. Mr. Miller advised Mr. McCoy that NSR would not pay reimbursement to any of the Claimants.

## CAUSE OF ACTION

19. BMWED repeats and realleges herein the allegations contained in paragraphs 1-18 above.

20. Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p) provides that "[i]f a carrier does not comply with an order of" an arbitration panel under Section 3 a union may seek enforcement of the award in Federal District Court.

21. NSR has failed and refused to comply with the Award of SBA 1087 by refusing to pay the Claimants the benefits they lost because NSR improperly terminated their benefits.

22. NSR's conduct entitles BMWED to relief in accordance with Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p)-enforcement of the Award.

## REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court:

A. Declare that NSR is entitled to enforcement of the SBA 1087 Award in accordance

4

with Section 3 First (p) of the Railway Labor Act, 45 U.S.C. § 153 First (p);

    B. Enforce and direct NSR to comply with the SBA 1087 Award;

    C. Require NSR to make whole BMWED's members  R.L. Beaver, A. Smelser and M.V.

Elam who suffered improper termination of their benefits, plus interest;

    D. Direct NSR to pay in full BMWED's attorneys' fees and costs in this action;

    E. Grant BMWED such other and further legal and equitable relief that the Court deems

just and proper.

                           Respectfully submitted,


                           /s/
                           Richard S. Edelman

Of Counsel:                    D.C. Bar No. 416348

William A. Bon, Esq.           O'Donnell, Schwartz & Anderson, P.C.

General Counsel                1900 L Street, N.W., #800

Brotherhood of Maintenance     Washington, DC 20036

of Way Employes             (202) 898-1824

20300 Civic Center Dr. Suite 320   fax (202)-429-8928

Southfield, MI 48076-4169

(248) 948-1010


            Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT

April 25, 2006